IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:08-CV-23183-HUCK/O'SULLIVAN

THE WEITZ COMPANY, LLC,

    Plaintiff,

v.

TRANSPORTATION INSURANCE
COMPANY,

    Defendant.
_____/

## THE WEITZ COMPANY LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST TRANSPORTATION INSURANCE COMPANY AND MEMORANDUM OF LAW IN SUPPORT

The Weitz Company LLC ("Weitz"), by and through undersigned counsel, and pursuant to Fed.R.Civ.P. 56 and Southern District of Florida Local Rules 7.1 and 7.5, hereby moves for partial summary judgment against Transportation Insurance Company ("Transportation") as to Counts I (Declaratory Judgment), II (Breach of Contract for the 2002 Policy) and III (Breach of Contract for the 2003 Policy) finding that Transportation owes Weitz a duty to defend Weitz against claims made in *CC-Aventura, Inc. and Classic Residence Management Limited Partnership v. The Weitz Company, LLC, The Weitz Company, Inc. and MSA Architects, Inc.*, Case No.: 06-21598-CIV-HUCK/SIMONTON, filed in the United States District Court, Southern District of Florida (the "Underlying Federal Action") pursuant to Weitz's additional insured status under Aero Cooling System, Inc.'s ("Aero Cooling") insurance policy, and that Transportation breached that duty.

LAW OFFICES OF
VINCENT F. VACCARELLA, P.A.

18851 N.E. 29TH AVENUE · HARBOUR CENTRE, SUITE 304 · AVENTURA, FLORIDA 33180
MIAMI DADE 305.932.4044 · BROWARD 954.522.5562 · FACSIMILE 305.932.4990

## I.  STATEMENT OF UNDISPUTED FACTS

Weitz hereby hereby incorporates its separate Statement of Undisputed Facts in support of this Motion for Partial Summary Judgment, which has been filed concurrently with this motion.[1]

## II.  MEMORANDUM OF LAW

### A.  INTRODUCTION

This action arises from a lawsuit pending in the Southern District of Florida, *CC-Aventura, Inc., and Classic Residence Mgt. Ltd P'ship v. The Weitz Co., LLC, et al*, pending in the United States District Court for the Southern District of Florida, Miami Division, Case No.: 06-21598-CIV-HUCK/SIMONTON (the "Underlying Federal Action").[2] In the Underlying Federal Action, the owner and manager of the Classic Residence by Hyatt (the "Project") sued Weitz, who was the General Contractor for the Project, and others for damages arising out of alleged defects in the design, planning and construction of the Project.[3] The Project is a retirement community consisting of two 23 story living towers, an amenities building and a two-story care center.

The claims against Weitz include claims for Breach of Contract (Count Six) and Violation of Florida Statute § 553.84 "Building Code" (Counts Seven and Nine), and seek to hold Weitz liable for damages incurred, in part, as a result of alleged construction defects in the subcontractor Aero Cooling's scope of work.

Weitz's subcontract with Aero Cooling required Aero Cooling to have liability insurance on which Weitz is an additional insured.[4] Pursuant to its contractual obligation with Weitz, Aero Cooling was insured by Transportation under a comprehensive general liability insurance policy,

---

[1] References to the Statement of Undisputed Facts will be reference as "SOF, ¶ _."
[2] SOF, ¶6.
[3] SOF, ¶¶ 1 and 11.

2

LAW OFFICES OF
VINCENT F. VACCARELLA, P.A.

1885 I N.E. 29TH AVENUE - HARBOUR CENTRE, SUITE 304 - AVENTURA, FLORIDA 33180
MIAMI DADE 305.932.4044 · BROWARD 954.522.5562 · FACSIMILE 305.932.4990

Policy No. C2054424640 from January 1, 2002 through January 1, 2003 (the "2002 Policy") and Policy No. C2054424640 from January 1, 2003 through January 1, 2004 (the "2003 Policy") (collectively the "Transportation Policies").[5]

Weitz made demand upon Transportation for defense with respect to the Underlying Federal Action.[6] Transportation has denied any duty to defend arguing that Weitz is not an additional insured because there are no direct allegations against Aero Cooling and because Transportation contends the damage in the Underlying Federal Action occurred after the Policy had expired.[7]

As demonstrated below, Weitz is an additional insured on the Policy, the allegations against Weitz in the Underlying Federal Action fall within the coverage provisions of the Policy, and no exclusions apply. Accordingly, Transportation owes Weitz a duty to defend, and, Weitz is entitled to summary judgment in its favor on its counts for declaratory relief and breach of contract as to the duty to defend owed by Transportation.

### B. STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Rule 56, Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To prevent summary judgment, the non-moving party must come forward with evidence sufficient to support a finding by the trier of fact in its favor. *See Wohl v. City of Hollywood*, 915 F.Supp. 339, 341 (S.D.Fla. 1995). Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an

---

[4] SOF, ¶ 3.
[5] SOF, ¶ 4.
[6] SOF, ¶¶ 7 and 14.

3

LAW OFFICES OF
VINCENT F. VACCARELLA, P.A.

1885 I N.E. 29TH AVENUE · HARBOUR CENTRE, SUITE 304 · AVENTURA, FLORIDA 33180
MIAMI DADE 305.932.4044 · BROWARD 954.522.5562 · FACSIMILE 305.932.4990

otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Under the Supreme Court's ruling in *Anderson*, "the trial judge must [enter summary judgment] if, under the governing law, there can be but one reasonable conclusion…" *Id.* at 250. The purpose of Rule 56 is to eliminate the needless delay and expense of an unnecessary trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## C. LEGAL STANDARDS FOR CONSTRUING A DUTY TO DEFEND UNDER INSURANCE POLICIES

Under Florida law, insurance policy interpretation is a question of law.[8] This Court must construe the Policy according to its plain meaning.[9] If the Court determines the policy language is susceptible to more than one reasonable interpretation, at least one of which provides coverage and at least one of which excludes coverage, the policy is considered ambiguous.[10] Ambiguous coverage provisions are construed strictly against the insurer and liberally in favor of the insured.[11]

In determining whether a duty to defend exists, the trial court is confined to the allegations of the complaint.[12] The insurer must provide a defense even if the allegations in the complaint are factually incorrect or meritless, or if some allegations require the insurer to defend and others do not.[13] "So long as the complaint alleges facts that create **potential** coverage under the policy, the

---

[7] SOF, ¶¶ 8 and 15.

[8] *Eagle Am. Ins. Co. v. Nichols*, 814 So.2d 1083, 1085 (Fla. 4th DCA 2002).

[9] *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000).

[10] *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So.2d 161, 165 (Fla. 2003).

[11] *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So.2d 1135, 1138 (Fla. 1998).

[12] *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1077 n. 3 (Fla. 1998).

[13] *Sunshine Birds & Supplies, Inc. v. U.S. Fid. & Guar. Co.*, 696 So.2d 907, 910 (Fla. 3d DCA 1997); *Irvine v. Prudential Prop. & Cas. Co.*, 630 So.2d 579, 579-80 (Fla. 3d DCA 1993).

4

insurer must defend the suit."[14] Significantly, "**any doubt with regard to the duty to defend must be resolved in favor of the insured**."[15]

### D. ARGUMENT

Transportation owes Weitz a duty to defend under the Policy because Weitz is an additional insured and the allegations in the Underlying Federal Action are within the scope of coverage afforded under the Policy.

#### 1. Weitz is An Additional Insured On The Transportation Policies

The Transportation Policies both contain Blanket Additional Insured Endorsements under which it is undisputed that Weitz is an additional insured. The 2002 Policy provides that the definition of who is an insured in Section II of the Policy is amended:

> to include as an insured any person or organization (called additional insured) whom you [Aero Cooling] are required to add as an additional insured on this policy under - a written contract or agreement . . . [c]urrently in effect or becoming effective during the term of this policy; and [e]xecuted prior to the "bodily injury," "property damage," "personal injury' or "advertising injury."[16]

Similarly, the 2003 Policy provides that the definition of who is an insured in Section II of the Policy is amended:

> to include as an insured any person or organization , including any person or organization shown in the schedule above, (called additional insured) whom you [Aero Cooling] are required to add as an additional insured on this policy under a written contract or written agreement . . . [c]urrently in effect or becoming effective during the term of this policy; and [e]xecuted prior to the "bodily injury," "property damage," or "personal and advertising injury."[17]

---

[14] *Grissom v. Commercial Union Ins. Co.*, 610 So.2d 1299, 1307 (Fla. 1st DCA 1993)(emphasis added)

[15] *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So.2d 435, 444 (Fla. 2005) (emphasis added).

[16] *See* Transportation Policies, Contractor's Blanket Additional Insured Endorsement, Ex. 2 to Holly Streeter-Schaefer Aff, Ex. A to Statement of Undisputed Facts.

[17] The differences in the wording between the 2002 Policy and the 2003 Policy Blanket Additional Insured Endorsements are irrelevant for purposes of determining whether Weitz is an

5

LAW OFFICES OF
VINCENT F. VACCARELLA, P.A.

18851 N.E. 29TH AVENUE - HARBOUR CENTRE, SUITE 304 - AVENTURA, FLORIDA 33180
MIAMI DADE 305.932.4044 - BROWARD 954.522.5562 - FACSIMILE 305.932.4990

The Blanket Additional Insured Endorsement is often referred to as an "automatic additional insureds endorsement," because the policy automatically provides additional insured coverage to those individuals and entities that the named insured has a contract with that requires they be added as an additional insured, without the need for any further action by the named insured or the insurer.[18]

The Blanket Additional Insured Endorsement is commonly used for named insureds who are in the construction industry because they routinely enter contracts that require them to provide liability insurance that not only covers them but also the general contractor, owner and others that are higher up in the chain of construction. "Where an insured faces repeated contractual demands to procure additional insurance coverage, it is more efficient for the insured to secure a blanket endorsement, thereby making it unnecessary to issue separate endorsements every time it becomes necessary to add an additional insured to the policy."[19]

It is undisputed that Weitz's subcontract with Aero Cooling expressly required that Aero Cooling obtain liability insurance coverage in order to perform on the Project, and that Weitz was required to be an additional insured on that policy.[20]

Specifically, the Weitz/Aero Cooling subcontract provided, in relevant part:

---

additional insured, and is not in dispute.

[18] 4 Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner and O'Connor on Construction Law §11.56 n. 14 (2002).

[19] 4 Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner and O'Connor on Construction Law §11.56 (2002).

[20] See Affidavit of Holly Streeter-Schaefer, Ex A to Statement of Undisputed Facts, and Aero Cooling Contract, Ex. 1 to the Aff.

> 2. <u>Insurance Requirements</u>. The Subcontractor [Aero Cooling] shall provide insurance as required by the Prime Contract, or if greater shall provide the following minimum insurance:
>
> \*\*\*
>
> (b) <u>Comprehensive General Liability</u> These limits can be met by primary and umbrella liability policies.... Bodily Injury, Property Damage, and Personal Injury Combined Single Limit shall be at least $1,000,000 Each Occurrence and $1,000,000 Aggregate.... $2,000,000 combined single limit for the following subcontractors:... HVAC.
>
> \*\*\*
>
> (d) The following shall be named as **ADDITIONAL INSUREDS** under the Comprehensive General Liability policy and the automobile policy: The Weitz Company, LLC .... (emphasis in original).[21]

Accordingly, by operation of the Blanket Additional Insured Endorsement and the express language of the Weitz/Aero Cooling subcontract, Weitz is an additional insured under the Transportation Policies.

### 2. Weitz's Alleged Liability In The Underlying Federal Action Arises, In Part, Out Of Or As A Result Of Aero Cooling's Work

Transportation has raised as an affirmative defense that Weitz is not an additional insured because its "liability is not alleged to arise out of or result from Aero Cooling's work for Weitz."[22] Transportation's position is without any basis and is directly contradicted by the express allegations in the Underlying Federal Action. Specifically, the Plaintiffs in the Underlying Federal Action allege at paragraph 36 of the Third Amended Complaint that:

> The design and construction defects in the Aventura Project include, but are not

---

[21] *See*, Weitz/Aero Cooling Subcontract, Section 2 of Exhibit A of the Subcontract, Ex. 1 to Holly Streeter-Schaefer Aff., Ex. A to the Statement of Undisputed Facts.

[22] *See* Transportation's First Affirmative Defense, ¶32.

7

LAW OFFICES OF
**VINCENT F. VACCARELLA, P.A.**

18851 N.E. 29TH AVENUE - HARBOUR CENTRE, SUITE 304 - AVENTURA, FLORIDA 33180
MIAMI DADE 305.932.4044 - BROWARD 954.522.5562 - FACSIMILE 305.932.4990

limited to, the following: (a) The improper design, construction, **supervision**[23], installation, and/or inspection of: . . . (v) Sealing and firesafing of vertical and horizontal penetrations in the Care Center, both interior and exterior, including, but not limited to, penetrations through the garage ceiling below the Towers and the Care Center, allowing untreated, moisture laden air to enter the building and move within the building, and allowing smoke and/or fire to spread in the buildings in the event of a fire; (vii) Piping insulation in the Care Center, including the garage, resulting in, among other things, "sweating" and elevated moisture in the wall cavities specifically and the building generally; (xi) The HVAC system, resulting in excessive negative pressure in the Care Center, inadequate controls to prevent outdoor air infiltration, and inadequate control of interior pressurization relationships between interior spaces; . . . (xv) Duct Heaters and duct work in the Care Center, including incorrect wiring, failure to seal AHU floor casings, and misaligned fiber board duct work resulting in sagging; . . . (xviii) Sundry defects in the Care Center involving . . . fan coil units, including broken control valves, condensate drain traps, and thermostats, missing dampers, duct heaters, ductwork...; (xix) Sundry defects in the Towers involving the outside air dampers; the private dining room air handling unit...." (emphasis added)

All of these items involve allegations that Weitz is liable because of or arising out of the HVAC scope of work that Aero Cooling performed. Additionally, at Paragraph 23 of the Third Amended Complaint in the Underlying Federal Action, Plaintiffs allege that "Weitz contracted with and/or hired third parties to perform certain tasks in connection with their respective work on the Aventura Project."

Thus, it is apparent from the allegations in the Underlying Federal Action, that the Plaintiffs are asserting that Weitz's liability, at least in part, arises out of or as a result of Aero Cooling's work.

---

[23] Transportation asserts as its Thirty-second Affirmative Defense that with respect to the 2002 Policy only, that the policy is limited to covering an additional insured's acts or omissions only as they are related to the supervision of Aero Cooling's work. As expressly alleged by the Plaintiffs they seek to hold Weitz liable, in part, for supervision of Aero Cooling's work, and thus, Transportation's Thirty-second affirmative defense is inapplicable based upon the express allegations.

8

LAW OFFICES OF
**VINCENT F. VACCARELLA, P.A.**

18851 N.E. 29TH AVENUE · HARBOUR CENTRE, SUITE 304 · AVENTURA, FLORIDA 33180
MIAMI DADE 305.932.4044 · BROWARD 954.522.5562 · FACSIMILE 305.932.4990

### 3. The Underlying Federal Action Alleges "Property Damage" As Defined By The Policy

The Policy provides that Transportation "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages."[24]  Thus, if the Underlying Federal Action contains allegations against Weitz of potentially covered "property damage" Transportation owes a duty to defend Weitz given its status as an additional insured.

The Transportation Policies define "property damage" as "physical injury to tangible property, including all resulting loss of use of that property."[25] Property damage also includes "all resulting loss of use of that property," and "loss of use of tangible property that is not physically injured."[26]

The Underlying Federal Action alleges numerous examples of property damage to the Project, including:

- Costs resulting from property damage, including damage to furniture, fixtures and equipment as a result of water intrusion;

- Costs for investigation, remediation, redesign and repairs;

- Costs to relocate residents of the Care Center and Towers, including storage fees;

---

[24] *See* Transportation Policies, Ex. 2 to Holly Streeter-Schaefer Aff., Ex. A to Statement of Undisputed Facts.

[25] *See* Transportation Policies, Ex. 2 to Holly Streeter-Schaefer Aff., Ex. A to Statement of Undisputed Facts.

[26] *See* Transportation Policies, Ex. 2 to Holly Streeter-Schaefer Aff., Ex. A to Statement of Undisputed Facts.

9

LAW OFFICES OF
VINCENT F. VACCARELLA, P.A.

18851 N.E. 29TH AVENUE - HARBOUR CENTRE, SUITE 304 - AVENTURA, FLORIDA 33180
MIAMI DADE 305.932.4044 - BROWARD 954.522.5562 - FACSIMILE 305.932.4990

- Costs to provide alternative facilities, comparable care and services and specially contracted transportation services for residents unable to move into and/or continue living in the Care Center;

- Business interruption costs, which include, but are not limited to, lost profits, loss of earnings on delayed receipt of entrance fees, monthly fees reductions, Care Center rent waivers, delay in eliminating or reducing the 90% refundable entrance fee note option, reduced ability to increase entrance fees and operating deficit.[27]

Thus, it is indisputable that the Underlying Federal Action contains allegations of "property damage" as defined by the Policy.

Further, Florida courts construe the term "property damage" broadly.[28] Negligent construction has been expressly held to constitute property damage.[29]

The Florida Supreme Court recently confirmed that a standard CGL policy like the Transportation Policies would not only cover damage caused by negligent construction, but also repair and replacement of property upon which there was defective installation of a non-defective component.[30] In *Pozzi*, a homeowner, upon discovering water leaks, sued the builder, manufacturer and subcontractor, alleging the windows were both defective and improperly installed. The builder's insurer sought a declaration of no coverage, claiming repair and replacement of the subcontractor's defective work was excluded under the policies. The Florida Supreme Court explained:

> If the windows were purchased by the Homeowner and <u>were not defective before being installed</u>, coverage would exist for the cost of repair or replacement of the windows because there is physical injury to tangible property (the windows) caused

---

[27] *See* Third Am. Compl. ¶48, in Underlying Federal Action, Ex. A to Weitz's Complaint.

[28] *McCreary v. Florida Res. Prop. & Cas. Joint Under. Assn.*, 758 So.2d 692, 694 (Fla. 4th DCA 1999) (finding loss of enjoyment of homeowner's property constitutes property damage).

[29] *CTC Dev. Corp. v. State Farm Fire & Cas.*, 704 So.2d 579, 581 (Fla. 1st DCA 1997) (stating "In short, it is reasonable to conclude that the [negligent construction] endured by the [homeowners] fits into the policy's coverage of 'property damage' caused by an 'occurrence.'").

[30] *Auto-Owners Ins. Co. v. Pozzi Window Co.*, 984 So.2d 1241 (Fla. 2008).

10

LAW OFFICES OF
VINCENT F. VACCARELLA, P.A.

1885 I N.E. 29TH AVENUE - HARBOUR CENTRE, SUITE 304 - AVENTURA, FLORIDA 33180
MIAMI DADE 305.932.4044 - BROWARD 954.522.5562 - FACSIMILE 305.932.4990

by defective installation by a subcontractor. In that instance, damage to the windows caused by the defective installation is the same as damage to other portions of the home caused by the leaking windows.[31]

Accordingly, the Florida Supreme Court has held that if the claim is for the repair or replacement of a product (here, components of the HVAC) that was not initially defective but was later damaged by defective installation, physical damage to tangible property exists. *Id.* at 1249.[32]

Thus, in addition to the allegations of property damage to furniture, fixtures, equipment, etc., any damages to the HVAC system components caused by defective installation also constitute covered property damage.

Accordingly, it is apparent that based upon the definition of "property damage" contained in the Policies, a review of the allegations in the Underlying Federal Action, and the application of case law interpreting and construing the Policy language that there are sufficient allegations of "property damage" in the Underlying Federal Action.

### 4. The Underlying Federal Action Alleges Property Damage as a Result of an Occurrence During The Policy Period

Transportation asserts as its twelfth affirmative defense that any "property damage" that did occur did not occur during the term of its policies. Transportation's twelfth affirmative defense fails to identify when it contends the property damage occurred, but Transportation's September 18th denial letter argues that the controlling date is September 2004, which is the date the Plaintiffs in the Underlying Federal Action allege they first became aware of some of the property damage. Significantly, the Plaintiffs in the Underlying Federal Action do **not** allege that September 2004 is the date the property damage actually occurred, but simply the date they became aware of it, and it is

---

[31] *Id.* at 1248 (emphasis added).
[32] The Plaintiffs in their Third Amended Complaint in the Underlying Federal Action have not

11

the date that the damage occurred and not the date that it manifested that is relevant for purposes of determining the duty to defend under Florida law.

As detailed below, based upon the application of Florida law to the Policies provisions and the allegations in the Underlying Federal Action, it is clear that a duty to defend exists because the allegations in the Underlying Federal Action support a finding that the property damage occurred during the respective Policy periods and was the result of an occurrence during the Policy periods.

### a. Coverage Is Triggered By An Occurrence

Under the Transportation Policies, coverage is triggered by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[33] The Policy does **not** define the term "accident." The Supreme Court of Florida has, however, defined it to mean an unintended event, including faulty or negligent construction.[34]

Here, there are no allegations that Aero Cooling or Weitz expected or intended to perform work negligently or that their work on the Project would result in the damages alleged. Because the damages sought in the Underlying Federal Action were thus unexpected from Aero Cooling's and Weitz's viewpoints, such damage constitutes an "occurrence" under Florida law.

### b. Florida Applies A Continuous Trigger

In situations in which the event causing the damage necessarily occurs simultaneously with the resulting harm, and is readily apparent, the trigger of coverage is easily determined, such as

---

made any direct allegations that the HVAC itself was defective in this case.

[33] *See* Transportation Policies, Definitions No. 13, Ex. 2 to Streeter-Schaefer Aff., Ex. A to Statement of Undisputed Facts.

[34] *United States Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 888 (Fla. 2007) (stating "faulty workmanship that is neither intended nor expected from the standpoint of the contractor can constitute an accident and, thus an occurrence"); *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1076 (Fla. 1998) (finding that errors in construction neither expected nor

12

LAW OFFICES OF
VINCENT F. VACCARELLA, P.A.

18851 N.E. 29TH AVENUE · HARBOUR CENTRE, SUITE 304 · AVENTURA, FLORIDA 33180
MIAMI DADE 305.932.4044 · BROWARD 954.522.5562 · FACSIMILE 305.932.4990

where there is an observed lightning strike of a house that immediately starts a fire. The issue is more complex where, as here, the event causing the damage is not discovered until later.

The Transportation Policies prescribe coverage when triggered by an occurrence, "including continuous or repeated exposure" to conditions causing property damage during the Policy period.[35] Thus, the focus is on the damage as the signal event. The damage can occur and become patent almost immediately, or, as here, the damage can occur but not be discovered until a later date. In either scenario, there is damage that invokes coverage.[36]

Florida case law and rules of contract construction establish that Florida applies the continuous trigger approach when analyzing coverage under an insurance policy. Under the continuous trigger approach, courts have held coverage is triggered throughout all of the policies on the risk from the initial exposure through manifestation and remediation.[37]

The Florida Supreme Court provided clarity on the application of continuous trigger, when it addressed the issue of whether separate but successive shootings of two victims in a restaurant constituted one occurrence or two.[38] The insurer claimed there was one occurrence – the restaurant owner's negligent failure to provide security. The policyholder argued the separate shootings

---

intended by the insured are an occurrence and therefore covered under a general liability policy).

[35] *See* Transportation Policies, Definitions No. 13, Ex. 2 to Streeter-Schaefer Aff., Ex. A to Statement of Undisputed Facts.

[36] This approach is consistent with not only the coverage maximizing interpretative principles, but also with the drafting history of the CGL policies. *See, e.g., Asbestos, Ins. Coverage Cases*, 904 P.2d 370 (Cal. 1995); Sayler & Zolensy, *Pollution Coverage and the Intent of the CGL Drafters: The Efffect of Living Backwards*, 4 MEALEY'S LITIG. RPTS. (INS.) 425, 439 (1987); *Shell Oil Co. v. Accident & Cas. Ins. Co. of Winterthur*, Case No. 278953 (Cal. Super. Ct. July 13, 1988) *reprinted in* 2 MEALEY'S LITIG. RPTS. (INS.) 18 (1988), *aff'd in part, Shell Oil Co. v. Winterthur Swiss ins. Co.*, 15 Cal. Rptr. 2d 815 (Cal. Ct. App. 1993).

[37] *See generally Keene Corp. v. Ins. Co. Of N. Am.*, 667 F.2d 1034 (D.D.C. 1981).

[38] *Koikos v. Travelers Ins. Co.*, 849 So.2d 263 (Fla. 2003).

LAW OFFICES OF
VINCENT F. VACCARELLA, P.A.

18851 N.E. 29TH AVENUE · HARBOUR CENTRE, SUITE 304 · AVENTURA, FLORIDA 33180
MIAMI DADE 305.932.4044 · BROWARD 954.522.5562 · FACSIMILE 305.932.4990

constituted two occurrences. The Florida Supreme Court found there were two occurrences stating:

> It is the act that causes the damage, which is neither expected nor intended from the standpoint of the insured, that constitutes the "occurrence." The insured's alleged negligence is not the "occurrence"; the insured's alleged negligence is the basis upon which the insured is being sued by the injured party. Focusing on the immediate cause – that is the act that causes the damage – rather than the underlying tort – that is the insured's negligence – is also consistent with the interpretation of other forms of insurance policies.[39]

The Court further stated that the policy's "continuous or repeated exposure" language (which is present in the Transportation Policies) includes harms that are ongoing or develop slowly.[40]

Transportation has wrongly denied it has a duty to defend Weitz, arguing that the damages occurred outside of the policy period, apparently based upon its mistaken application of a manifestation trigger[41] of coverage recognized by certain courts, rather than the appropriate continuous trigger to be applied under Florida law. Here, the Complaint in the Underlying Federal Action does not expressly state what date the damage allegedly occurred to the Plaintiffs, but instead it simply alleges the date the damage was discovered.

The Eleventh Circuit faced a similar situation in *Trizec Props., Inc. v. Biltmore Constr. Co.*, 767 F.2d 810 (11th Cir. 1985), where the insurer argued that it did not have a duty to defend a claim for negligent construction of a roof because although its policy was in place during parts of the construction, the damage did not manifest itself until three years after the policy had expired. The Eleventh Circuit recognized that under Florida law, that continuous damage can trigger multiple

---

[39] *Id.* at 271.

[40] *Trizec*, 767 F.2d. at 813; *see also Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church*, 420 F.3d 1317 (11th Cir. 2005) (applying *Koikos*).

[41] Under the manifestation trigger, coverage is triggered once the damages become manifest or diagnosable. *Eagle-Picher Indus., Inc. v. Liberty Mut. Ins. Co.*, 682 F.2d 12 (1st Cir. 1982).

14

LAW OFFICES OF
VINCENT F. VACCARELLA, P.A.

18851 N.E. 29TH AVENUE - HARBOUR CENTRE, SUITE 304 - AVENTURA, FLORIDA 33180
MIAMI DADE 305.932.4044 - BROWARD 954.522.5562 - FACSIMILE 305.932.4990

policy periods and that:

> The potential for coverage is triggered when an "occurrence" results in "property damage." There is no requirement that the damages "manifest" themselves during the policy period. Rather, it is the damage itself which must occur during the policy period for coverage to be effective. Here, the actual date that the damage occurred is not expressly alleged, but the language of the complaint, at least marginally and by reasonable implication, could be construed to allege that the damage (cracking and leaking of roof deck with resultant rusting) may have begun to occur immediately after installation, 1971 to 1975, and continued gradually thereafter over a period of time.... Because the complaint alleges facts which fairly bring the cause within the coverage of the insurance contract there is a potential for coverage and [the insurer] owes [the policyholder] a duty to defend the main action.[42]

In order for Transportation to deny a duty to defend based upon an argument that the property damage occurred outside of the policy period, it bears the burden of showing that the Third Amended Complaint in the Underlying Federal Action alleges a specific date upon which the damage occurred which is outside of its policy periods. Transportation, however, cannot do so, as the Third Amended Complaint simply sets forth, like in *Trizec*, the date the damage was discovered. Here, as in *Trizec*, a duty to defend exists because although "the actual date that the damage occurred is not expressly alleged," the allegations can be "construed to allege that the damage ... may have begun to occur immediately after installation."[43] And as the Eleventh Circuit found in *Trizec*, where there is a "potential for coverage" a duty to defend exists.[44]

### 5. Transportation's Affirmative Defenses Are Irrelevant To The Duty To Defend

With respect to the remainder[45] of the affirmative defenses that Transportation asserts, it is

---

[42] *Trizec,.* at 813 (internal citations omitted).

[43] *Trizec,* at 813 (internal citations omitted).

[44] *Id.*

[45] Weitz has already addressed Transportation's First, Sixth, Eighth, Twelfth, Twenty-third, and Thirty Second Affirmative defenses in its arguments above, and with respect to Transportation's Twentieth Affirmative defense regarding compliance with all terms of the Policy, Weitz alleged

15

clear that based upon the language that Transportation used in asserting them, that the affirmative defenses, if ever applicable, would only be relevant to claims for indemnity and not with respect to the duty to defend, because in order for them to apply they require further development of facts, whereas the Court in determining the existence of a duty to defend is not to make determinations of the factual allegations. Accordingly, the Court does not even need to consider the remainder of Transportation's affirmative defenses as they are not germane to whether Weitz is entitled to summary judgment on the duty to defend claim.

For instance, in 19 of those affirmative defenses[46], Transportation uses the phrase "to the extent that" which necessarily makes them subject to and dependent upon a later determination of underlying facts that may or may not ever be developed. Until such time as those underlying facts are developed, it is not possible to determine whether the affirmative defenses have any application.

Similarly, with respect to the few other affirmative defenses that Transportation asserted which do not use the phrase "to the extent that," on those affirmative defenses, if they are ever proven, they do not preclude coverage entirely, but instead limit aspects of indemnity, and thus they do not preclude a finding of a duty to defend because a duty to defend exists even if not all of the alleged claims are covered, and Transportation has only alleged that **some** of the property damage may not be covered in those affirmative defenses.[47]

Moreover, with respect to Transportation's Twenty-fourth, Twenty-sixth, Twenty-seventh, Twenty-ninth, Thirtieth, and Thirty-first affirmative defenses, the allegations in the Underlying

---

that it complied with the terms and Transportation's affirmative defense does not provide any supporting facts and Transportation has not introduced any contradictory evidence.
[46] *See*, Transportation's Affirmative Defenses, 2-5, 7, 9-11, 13-19, 21-22, 25, and 28.
[47] *Sunshine Birds & Supplies, Inc. v. U.S. Fid. & Guar. Co.*, 696 So.2d 907, 910 (Fla. 3d DCA 1997); *Irvine v. Prudential Prop. & Cas. Co.*, 630 So. 2d 579, 580 (Fla. 3d DCA 1993).

16

LAW OFFICES OF
VINCENT F. VACCARELLA, P.A.

18851 N.E. 29TH AVENUE - HARBOUR CENTRE, SUITE 304 - AVENTURA, FLORIDA 33180
MIAMI DADE 305.932.4044 - BROWARD 954.522.5562 - FACSIMILE 305.932.4990

Federal Action establish that the policy exclusion those affirmative defenses are based upon cannot excuse Transportation from its duty to defend Weitz, because at the very least, the Underlying Federal Action seeks damages for property which are outside of those exclusions. Thus, exclusion j(5) upon which Transportation relies upon for its Twenty-fourth affirmative defense, would only apply, if at all, to the "particular part" of the Project on which Aero was "performing operations." The exclusion would not apply to other parts of the Project, or to work done by Aero that caused damage.[48] The Underlying Federal Action contains numerous allegations of damage to furniture, wall paper, windows and other items upon which Aero Cooling did not perform any operations.[49]

Similarly, Transportation's Twenty-seventh, Twenty-ninth and Thirty-first affirmative defenses, which are based upon exclusions k, l, m, n, and j(6) are limited by their terms to specific items of work and damages that are overcome by the allegations in the Underlying Federal Action in which it is made clear that the Plaintiffs in that case seek different types of damages and to items that are not Aero Cooling's work and thus they have no bearing on Transportation's duty to defend Weitz.

## III. CONCLUSION

For the foregoing reasons, Weitz respectfully requests that this Court grant its Motion for Partial Summary Judgment on Counts I, II and III, finding as a matter of law that Transportation

---

[48] *See Auto-Owners Ins. Co. v. Pozzi Window Co.*, 984 So.2d 1241 (Fla. 2008) (recognizing difference between a claim for the costs of repairing or removing defective work, which is not a claim for property damage, and a claim for the costs of repairing damage caused by the defective work, which is a claim for property damage); *see also American Equity Ins. Co. v. Don Van Ginhoven*, 788 So. 2d 388, 391 (Fla. 5th DCA 2001) (applying exclusion to pool because contractor was working on the entire pool, but stating "[c]onversely, damage to any property that [the contractor] was not performing operations on, or incorrectly performing work on, is not excluded.").

[49] *See* Third Amended Complaint in the Underlying Federal Action, ¶ 48.

LAW OFFICES OF
VINCENT F. VACCARELLA, P.A.

1885 I N.E. 29TH AVENUE - HARBOUR CENTRE, SUITE 304 - AVENTURA, FLORIDA 33180
MIAMI DADE 305.932.4044 - BROWARD 954.522.5562 - FACSIMILE 305.932.4990

owes Weitz a duty to defend in the Underlying Federal Litigation.

Based upon Florida law, because the Underlying Federal Action alleges facts that are potentially covered, Transportation owes Weitz a duty to defend

Respectfully submitted,

By: _s/John A. Moore_
VINCENT F. VACCARELLA
Fla. Bar No. 017426
vincent@v-law.net
JOHN A. MOORE
Fla. Bar No. 091820
jmoore@v-law.net

VINCENT F. VACCARELLA, P.A.
Harbour Centre
18851 N.E. 29th Ave., Suite 304
Aventura, FL 33180
Dade phone          (305) 932-4044
Broward phone       (954) 522-5562
Facsimile           (305) 932-4990
Attorneys for The Weitz Company, LLC

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 1, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on A. Anderson B. Dogali, Esq. and Haley R. Maple, Esq., Forizs & Dogali, P.L., 4301 Anchor Plaza Parkway, Suite 300 Tampa, FL 33634; and Pamela Dunlop Gates, Esq Colliau Elenius Murphy Carluccio Keener & Morrow 600 North Pearl Street, Suite 1400 Dallas, Texas 75201 via transmission of Notices of Electronic Filing generated by CM/ECF.

By: _/s/ John A. Moore_
Vincent F. Vaccarella (FBN: 017426)
vincent@v-law.net
John A. Moore (FBN 091820)
jmoore@v-law.net
Vincent F. Vaccarella, P.A.
Harbor Centre – Suite 304
18851 NE 29 Avenue
Aventura, Florida 33180

18

Telephone: (305) 932-4044
Facsimile: (305) 932-4990
Attorneys for The Weitz Company LLC

LAW OFFICES OF
VINCENT F. VACCARELLA, P.A.

18851 N.E. 29TH AVENUE - HARBOUR CENTRE, SUITE 304 - AVENTURA, FLORIDA 33180
MIAMI DADE 305.932.4044 · BROWARD 954.522.5562 - FACSIMILE 305.932.4990