UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 08-23183-CIV-HUCK/O'SULLIVAN

THE WEITZ COMPANY, LLC.,

        Plaintiff,

vs.

TRANSPORTATION INSURANCE
COMPANY,

        Defendant.
_____/



## OMNIBUS ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND FINAL DECLARATORY JUDGMENT

This cause is before the Court upon Transportation Insurance Company's Motion for Summary Judgment (D.E. #37) and The Weitz Company, LLC's Motion for Partial Summary Judgment (D.E. #42).[1] The Court has considered the Motions, the parties' responses and replies, all other pertinent parts of the record, and the parties' arguments at the hearing on these motions held on May 8, 2009. For the reasons below and those stated in open court at the hearing on these Motions, Weitz's Motion is granted and Transportation's Motion is denied.

### BACKGROUND

This case involves a suit by The Weitz Company, LLC against the Transportation Insurance Company in which Weitz seeks a declaratory judgment that Transportation has a duty to defend Weitz in an underlying case styled *CC-Aventura, Inc. and Classic Residence Management Limited Partnership v. The Weitz Company, LLC, The Weitz Company, Inc., and MSA Architects, Inc.*, Case No. 06-21598-CIV-HUCK/O'SULLIVAN (the "Main Proceeding").

---

[1] Since Weitz filed its Motion for Partial Summary Judgment, Weitz and Transportation have stipulated to the dismissal without prejudice of Weitz's breach of contract claims. This stipulated dismissal leaves only Weitz's Count seeking a declaratory judgment that Transportation has a duty to defend Weitz in the *CC-Aventura, et al., v. The Weitz Company, LLC, et al.* (Case No. 06-21598-CIV-HUCK/O'SULLIVAN) litigation (Count I). Accordingly, although titled a Motion for Partial Summary Judgment, Weitz's motion seeks to dispose of this case in its entirety.

In the Main Proceeding, CC-Aventura, Inc. and Classic Residence Managment, LLC (the "Aventura Plaintiffs") sued The Weitz Company, LLC and others for alleged defects in the design and construction of a senior living community consisting of two twenty-three-story residential towers, an amenities building, and a two-story health center (the "Project"). The operative complaint in the Main Proceeding is CC-Aventura, Inc. and Classic Residence Management Limited Partnership's Third Amended Complaint (the "Third Amended Complaint"). (Main Proceeding, D.E. #329.)

The Aventura Plaintiffs allege that certain construction defects caused or were substantial factors in causing water damage and mold growth, and that those construction defects materially impaired the condition, value, and integrity of the Project. They allege that extensive mold growth and water damage was discovered first in the health center and then later in the residential towers, and that the damage was caused, in part, by defective design, construction, supervision, installation, and/or inspection of the HVAC system, duct work, piping insulation, fan coil units, air dampers, and air handling units. (Main Proceeding, D.E. #329, ¶ 36.) Although Weitz was the Project's general contractor, much of the allegedly defective construction work was carried out by various third-party subcontractors. (Main Proceeding, D.E. #329, ¶ 23.) One such third-party subcontractor hired by Weitz to work on the Project was Aero Cooling Systems, Inc. (Def.'s Am. Answer, D.E. #35, ¶ 7.) Aero was hired to perform heating, ventilating, and air conditioning work ("HVAC") on the Project. (*Id.*) The Aventura Plaintiffs allege that some of this HVAC work contributed to or caused damage to the Project. (Main Proceeding, D.E. #329, ¶¶ 36, 48.)

The Aero/Weitz subcontract requires that Aero provide liability insurance upon which Weitz is an additional insured. (Def.'s Am. Answer, D.E. #35, ¶ 7.) Transportation issued Aero two consecutive commercial general liability policies, with coverage running from January 1, 2002 through January 1, 2004 (the "Insurance Policies"). (Def.'s Stmt. of Facts, D.E. #39, ¶ 1.) The Insurance Policies contain Blanket Additional Insured Endorsements which provide for additional insured coverage to Weitz. (*Id.*; D.E. #43, Ex. 2-5.). Weitz, asserting that it is an additional insured pursuant to the provisions of the Insruance Policies, made a demand on Transportation to defend it against claims arising out of the scope of Aero's work in the Main Proceeding. (D.E. #43, Ex. 7, 9.) Transportation denied Weitz's request (D.E. #43, Ex. 8, 10), prompting Weitz to file this present suit

seeking a declaratory judgment that Weitz is an additional insured under the Insurance Policies, and that Transportation has a duty to defend Weitz against claims arising out of the scope of Aero's work in the Main Proceeding.

Both parties have now filed motions for summary judgment. In its motion, Transportation argues that it owes no additional insured defense to Weitz because (i) the Third Amended Complaint does not allege that Weitz's liability arises from the work of Aero; (ii) the damage alleged in the Main Proceeding is not "property damage" as defined by the Insurance Policies; (iii) the damage described in Third Amended Complaint occurred after coverage under the Insurance Policies expired; and (iv) various exclusions included in the Insurance Policies preclude coverage.[2] Weitz's Motion for Partial Summary Judgment is a mirror image of Transportation's, arguing the opposite of each of the arguments made by Transportation.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *See Allen*, 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether that evidence could reasonably sustain a jury verdict. *Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. Further, while the burden on the movant is great, the opposing party has a duty to present affirmative

---

[2] Transportation also moved for summary judgment on several of its Counterclaims seeking declaratory judgment that it owes Weitz no duty to defend against certain counterclaims, cross-claims, and third-party claims brought by Weitz. Weitz, however, acknowledges that it has not sought defense under the Insurance Policies on these claims. Accordingly, as there is no active controversy as whether Transportation is required to defend Weitz on these claims, the parties agreed that these issues presently need not be determined. The Court, therefore, makes no determination as to the merits of Transportation's argument that it owes Weitz no duty to defend such claims.

evidence in order to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative, is not enough. *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

In this case, the parties filed a Joint Notice agreeing that there are no genuine issues of material fact with respect to the issue of the duty to defend, and further agreeing that the issue of the duty to defend can be determined by summary judgment without the need of a trial. (D.E. #83.) On its independent review of the record, the Court also concludes that there are no genuine issues of material fact precluding summary judgment as to the duty to defend in this case.

## ANALYSIS

The interpretation of an insurance contract is a question of law for the Court to decide. *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002). "Like other contracts, contracts of insurance should receive a construction that is reasonable, practical, sensible, and just," *General Star Indem. v. W. Fla. Vill. Inn, Inc.*, 874 So. 2d 26, 29 (Fla. 2d DCA 2004), and "will not be construed to reach an absurd result." *Deni Assocs. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1140 (Fla. 1998). "In general, coverage clauses in insurance policies are interpreted in the broadest possible manner to effect the greatest amount of coverage. In contrast, exclusionary clauses are strictly construed, again in a manner that affords the insured the broadest possible coverage." *Fabricant v. Kemper Independence Ins. Co.*, 474 F. Supp. 2d 1328, 1331 (S.D. Fla. 2007) (internal citations omitted).

An "insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." *Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442-43 (Fla. 2005). The "insurer must defend if the allegations in the complaint could bring the insured within the policy provisions of coverage." *Grissom v. Commercial Union Ins. Co.*, 610 So. 2d 1299, 1307 (Fla. 1st DCA 1992). Even if "the complaint alleges facts partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit." *Id.* "If the allegations of the complaint leave any doubt regarding the duty to defend, the question must be resolved in favor of the insured requiring the insurer to defend." *Baron Oil Co.*

*v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 814 (Fla. 1st DCA 1985). "So long as the complaint alleges facts that create potential coverage under the policy, the insurer must defend the suit." *Grissom*, 610 So.2d at 1307. Further, while the duty to defend, in the first instance, is determined from the allegations of the complaint, "if it later becomes apparent that claims not originally within the scope of the pleadings are being made which are within the insurance coverage, the insurance carrier upon notification would then become obligated to defend." *Broward Marine, Inc. v. Aetna Ins. Co.*, 459 So. 2d 330, 331 (Fla.4th DCA 1984) (quoting *Milliken v. Fidelity and Casualty Company of New York*, 338 F.2d 35 (10th Cir. 1964)).

The above legal standards show that finding a duty to defend is favored unless the complaint clearly shows that the claims do not fall within the subject insurance policy's coverage. Here, Transportation argues that the allegations contained in Third Amended Complaint cannot fairly be read to show that Transportation owes Weitz a defense in the Main Proceeding. However, as is discussed below, a reasonable and fair reading of the Insurance Policies and of the allegations contained in the Third Amended Complaint shows otherwise.

### I. Allegations Against Aero Cooling

#### a. Coverage under the "eight corners rule"

Transportation first argues that its obligation to defend Weitz under the Insurance Policies is triggered only if the Third Amended Complaint alleges that Weitz's liability arises from the work of Aero Cooling. Because Aero is not specifically named in the Third Party Complaint, Transportation argues that the allegations cannot be "fairly and reasonably read to assert that the Aventura Plaintiffs seek to hold Weitz liable for the conduct of Aero Cooling or any of its other subcontractors." (Def.'s Motion, D.E. #38, p.17.) Transportation argues that the "general rule is that an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the true facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004). This "eight corners rule,"[3] agues Transportation, precludes

---

[3] *See Colony Ins. Co. v. Barnes*, 410 F. Supp. 2d 1137, 1139 (N.D. Fla. 2005) ("Under controlling Florida law, the issue of a liability insurer's duty to defend a lawsuit against its insured is governed by the terms of the insurance policy and the allegations of the complaint.

the Court from considering the "true fact" that Aero was the HVAC subcontractor in the Main Proceeding. Transportation asserts that the Court should put out of its mind any of the actual facts in play in the Main Proceeding, and, when doing so, the Court will not know who the HVAC subcontractor was (or even that there was a HVAC subcontractor), and accordingly will not be able to find that Weitz's liability in the Main Proceeding in any way flows from the work undertaken by Aero, thus absolving Transportation of any duty to defend.

Weitz counters Transportation's argument by arguing that the Third Amended Complaint contains allegations that, at a minimum, "create potential coverage under the policy," thus requiring Transportation to defend Weitz in the Main Proceeding. *See Grissom v. Commercial Union Ins. Co.*, 610 So. 2d 1299, 1307 (Fla. 1st DCA 1992) ("So long as the complaint alleges facts that create potential coverage under the policy, the insurer must defend the suit."). Weitz directs the Court's attention to paragraphs 23 and 36 of the Third Amended Complaint. Paragraph 23 states that "[The Aventura] Plaintiffs are informed and believe and on that basis allege that both MSA and Weitz contracted with and/or hired third parties to perform certain tasks in connection with their respective work on the Aventura Project." Paragraph 36, in turn, sets out numerous alleged defects in the Project potentially related to the HVAC work, including

> [t]he improper design, construction, supervision, installation, and/or inspection of: . . . (v) Sealing and firesafing of vertical and horizontal penetrations in the Care Center, both interior and exterior, including, but not limited to, penetrations through the garage ceiling below the Towers and the Care Center, allowing untreated, moisture laden air to enter the building and move within the building, and allowing smoke and/or fire to spread in the buildings in the event of a fire; (vii) Piping insulation in the Care Center, including the garage, resulting in, among other things, "sweating" and elevated moisture in the wall cavities specifically and the building generally; (xi) The HVAC system, resulting in excessive negative pressure in the Care Center, inadequate controls to prevent outdoor air infiltration, and inadequate control of interior pressurization relationships between interior spaces; . . . (xv) Duct Heaters and duct work in the Care Center, including incorrect wiring, failure to seal AHU floor casings, and misaligned fiber board duct work resulting in sagging; . . . (xviii) Sundry defects in the Care Center involving . . . fan coil units, including

---

This is sometimes denominated the "eight corners rule," a reference to the relevant inquiry's focus on the four corners of the policy and the four corners of the complaint. If the complaint alleges any claim that, if proven, might come within the insurer's indemnity obligation, the insurer must defend the entire action. Doubts are resolved in favor of the insured.").

6

broken control valves, condensate drain traps, and thermostats, missing dampers, duct heaters, ductwork...; (xix) Sundry defects in the Towers involving the outside air dampers; the private dining room air handling unit.

The Court finds that these factual allegations fairly and potentially bring the suit within the coverage of the Insurance Policies. First, the Third Amended Complaint clearly alleges damages caused by HVAC defects. Second, the Third Amended Complaint alleges that Weitz hired subcontractors to perform certain tasks for which the Aventura Plaintiffs are seeking to hold Weitz liable. Although Aero is not referenced by name in the Third Amended Complaint, the allegations of the Third Amended Complaint do allege defects potentially caused by the deficient work of various subcontractors hired by Weitz. Aero was the HVAC subcontractor,[4] hence the allegations could bring the insured within the policy provisions of coverage. When paragraphs 23 and 36 are read together, there is no doubt that Weitz's liability, if any, at a minimum <u>could</u> <u>potentially</u> arise out of alleged deficiencies in work performed by Weitz's HVAC subcontractor, Aero. *See Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442-43 (Fla. 2005) ("insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage."); *Grissom*, 610 So. at 1307 ("insurer must defend if the allegations in the complaint could bring the insured within the policy provisions of coverage."). Further, even if there were doubt as to whether Aero's work may be the cause of Weitz's potential liability in the Main Proceeding, Transportation would still be required to defend Weitz because, when the "allegations of the complaint leave any doubt regarding the duty to defend, the question must be resolved in favor of the insured requiring the insurer to defend." *Baron Oil Co.*, 470 So. 2d at 814.

    b.    *Exception to the "eight corners rule"*

Although the Court finds, as an initial matter, that Weitz is an additional insured under the Insurance Policies when looking at only the Third Amended Complaint and the Insurance Policies, the Court notes that application of the "eight corners rule" is not as rigid as Transportation suggests. While the general rule may be that the "duty to defend, in the first instance, is determined from the

---

    [4] *See* Def.'s Answer, D.E. #22-1, ¶ 7 ("Transportation admits, based upon information and belief, that Weitz and Aero Cooling Systems, Inc. entered into a subcontract in connection with the Project . . . .")

allegations of the complaint. . . . [I]f it later becomes apparent that claims not originally within the scope of the pleadings are being made which are within the insurance coverage, the insurance carrier upon notification would then become obligated to defend." *Broward Marine, Inc. v. Aetna Ins. Co.*, 459 So.2d 330, 331 (Fla. 4th DCA 1984). In *Broward Marine*, the court found that, although the initial complaint (complaining of excluded construction defects) was not covered by the insurance policy, "midway through that prior law suit, it became obvious that the boat owner was also proceeding against the boat builder on the theory of negligent repairs which would if successful provide coverage." The court determined that, although negligence was never specifically plead, the actual circumstances of the case required that the insurer defend the insured. *Id.* at 331. Similarly, in *Grissom v. Commercial Union Ins. Co.*, 610 So.2d 1299 (Fla. 1st DCA 1992), the court found that while the initial complaint may have alleged only intentional torts, which were not covered by the insurance policy, the amended complaint could "at least marginally and by reasonable implication," be construed as raising a theory of recovery based on negligence, which was covered by the policy. More recently, in *Evanston Ins. Co. v. Royal American Const. Co., Inc.*, 2007 WL 4240749, 1 (N.D. Fla. 2007), like *Broward Marine*, the court found that, although not plead, the parties had construed the pleadings as raising a negligence claim, requiring the insurer to defend the action. The court stated that the "'eight corners rule' does not relieve an insurer of the duty to defend if a complaint's initially-uncovered allegations are expanded-through formal amendment or even through the parties' explicit or implicit construction of the existing complaint-to include covered claims." *Id.* at *4. Quoting *C.A. Fielland, Inc. v. Fidelity & Cas. Co.*, 297 So.2d 122 (Fla. 2d DCA 1974), the *Evanston* Court stated that

> as a general rule the duty of an insurer to defend its insured in federal court litigation is determined in the beginning of the litigation by the coverage afforded by the policy, as compared with the allegations of the complaint filed in the action. But, <u>the allegations of the complaint are not conclusive on the issue</u>. The duty to defend may attach at some later stage of the litigation if the issues of the case are so changed or enlarged as to come within the policy coverage. The reason for this rule is that under the Federal Rules of Civil Procedure the dimensions of a lawsuit are not determined by the pleadings because the pleadings are not a rigid and unchangeable blueprint of the rights of the parties. Thus, the insurer's duty to defend an action brought in federal court against its insured may arise or attach at any stage in the litigation.

2007 WL 4240749, *4 (emphasis added).

Here, while Aero is not specifically named in the Third Party Complaint, it is well known that the Aventura Plaintiffs are seeking to hold Weitz vicariously liable for the alleged defective work undertaken by the various third-party subcontractors, including Aero. Indeed, Transportation acknowledges in this case that Aero was hired by Weitz to perform the HVAC work on the Project.[5] The fact that Weitz's liability arises in part from the alleged defective work of Aero may not have been immediately obvious when the Aventura Plaintiffs first filed their initial complaint in the Main Proceeding, however, even a cursory review of the docket in the Main Proceeding shows that Aero is, and has been for some time, an active litigant in that dispute because of the alleged defects in the HVAC work. Similar to the case cited above, the circumstances of this dispute require that the Court not close its eyes to the obvious and known — the actual names of the parties parties involved in the Main Proceeding. Given that Aero was undisputedly a subcontractor responsible for undertaking elements of the HVAC work on the project, it is reasonable to assume that some of the claims alleged against Weitz in Third Amended Complaint could potentially arise out of the work ultimately performed by Aero. Accordingly, the Court finds that Weitz is an additional insured under the terms of the Insurance Policies.

    c.    *Inapplicability of the "eight corners rule" in this case*

Assuming, however, that a rigid application of the "eight corners rule" would exclude coverage here because Aero is not specifically mentioned by name in the Third Party Complaint, the Court finds that strict reliance on the "eight corners rule" is inappropriate in cases like this.

The "eight corners rule" was developed and applied in cases where the <u>type of claim</u> is at issue, rather than where, as here, the dispute pertains to <u>who</u> the claims are being made against. In most cases where the "eight corners rule" is applied, the issue is whether the alleged cause of action falls under the coverage of the insurance policy (e.g., allegations of negligence which is covered versus an intentional tort which is not covered). In such cases, the plaintiff often sues the insured by alleging various causes of action that might bring the insured within the coverage of his or her insurance policy. Thus, for example, even though some of the alleged causes of action in such cases

---

[5] "Transportation admits, based upon information and belief, that Weitz and Aero Cooling Systems, Inc. entered into a subcontract in connection with the Project . . . ." (Def.'s Answer, D.E. #22-1, ¶ 7.)

9

may appear factually or legally unsound, courts apply the "eight corners rule" because it comports with the policy of providing coverage to the insured even when doubts arise as to whether such claims will ultimately succeed. *See, e.g., Logozzo v. Kent Ins. Co.*, 464 So. 2d 605, 607 (Fla. 3d DCA 1985) (in a case where the plaintiff was intentionally shot by an employee clearly acting outside of the scope of his employment, the court found that the employer's insurance company had a duty to defend the employer against a negligence calim, stating that "the carrier must defend even if the claim is factually incorrect, or, as seems true here, legally unsound." (internal citations omitted)).

In the cases relied on by both parties in this dispute, no question was raised as to the actual existence of the underlying relationship of insurer and insured. The parties' cited cases assumed an insurer-insured relationship and then dealt with the extent of the insurer's duty to defend the insured under its contract as embodied in the policy and circumscribed by the causes of action alleged. Here, however, Transportation's initial argument places the question of whether an insurer-insured relationship even exists at the forefront of this dispute. Transportation's argument—that Weitz is not an additional insured under the Insurance Policies because the Aventura Plaintiffs did not specifically name Aero in the Third Amended Complaint—is not an issue of whether the various causes of action asserted against Weitz in the Main Proceeding are covered by the policy, but instead raises the issue of whether Weitz is an insured under the Insurance Policies in the first instance simply because Aero is not specifically named.

Applying the "eight corners rule" to determine who is an insured under the subject insurance policy, as Transportation's argument requires, is neither reasonable or logical. There is no doubt that the Third Amended Complaint alleges claims against Weitz which arise, at least in part, from the work performed by Aero. Weitz now seeks defense of these claims, which is precisely the purpose of the Additional Insured Endorsements provided by Transportation to Aero. To allow Transportation to deny Weitz coverage simply because the Aventura Plaintiffs do not specifically refer to Aero by name (as opposed to the HVAC work in general) in the Third Amended Complaint does not change the fact of coverage. "[T]he creation of the basic insurer-insured relationship and the ensuing duty to defend cannot be left to the imagination of the drafter of a complaint, and as to who is an insured, the facts as they actually exist must be determinative." *Nateman v. Hartford*

*Casualty Ins. Co.*, 544 So. 2d 1026, 1027 (Fla. 3d DCA 1989) (internal citation omitted); *see also Navajo Freight Lines v. Liberty Mut. Ins. Co.*, 471 P.2d 309, 315 (Ariz. Ct. App. 1970) ("A *sine qua non* to the existence of any obligation to defend, or pay, whether the suit be groundless or otherwise, is the pre-existing relationship of insurer-insured. The creation of this basic relationship cannot be left to the imagination of the drafter of a complaint.").

The "eight corners rule" is more appropriately applied in situations where the claims being asserted are at issue and the insurer-insured relationship is already established. However, when, as here, the insurer-insured relationship is being contested, the Court should look to the actual, known facts of the case. To do otherwise would place an insured's bargained-for rights completely at the imagination (or short-hand drafting) of the author of a complaint. *See Nateman*, 544 So. 2d at 1027. Here, whether the Aventura Plaintiffs simply reference the subcontracted HVAC work generally or whether they reference Aero specifically by name, it makes no difference to the claims asserted by the Aventura Plaintiffs against Weitz for which Aero may be ultimately responsible. The Aventura Plaintiffs, like most plaintiffs, often have little to gain by providing more specificity in their pleadings than is required by the Federal Rules of Civil Procedure. Indeed, it may be to the Aventura Plaintiffs' advantage to draft the Third Amended Complaint as broadly as possible. The Aventura Plaintiffs are seeking redress directly from Weitz, not Aero, and they suffer no ill effects by pleading only those allegations required to bring their claims against Weitz. However, if Transportation's argument on this issue were accepted, the fact that the Aventura Plaintiffs chose not to specifically name Aero (or any other subcontractor for that matter) would eliminate Weitz's rights under the Insurance Policies. Put another way, if Transportation's argument wins the day, every single insurance carrier that provided Additional Insured Endorsements to the subcontractors hired by Weitz would be absolved of their obligations to defend Weitz on nothing more than the drafting whims of the Aventura Plaintiffs. This would be illogical, and cannot be the law.

Accordingly, the Court finds the "eight corners rule" inapplicable to this case, and takes notice that Aero entered into a subcontract with Weitz in connection with the Project to perform HVAC work. In light of this fact, and under a fair reading of the Third Amended Complaint and Insurance Policies, it is reasonable to assume that Weitz's liability, at a minimum, could potentially arise out of alleged deficiencies in work ultimately performed by Aero, thus making Weitz an

additional insured under the Insurance Policies. *See Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442-43 (Fla. 2005)

## II. "Property Damage"

Transportation next argues that, even if the Court finds Weitz to be an additional insured under the Insurance Policies, the Insurance Policies only cover "property damage," and that the Third Amended Complaint does not allege any damage that can be classified as property damage.[6] Transportation argues that under Florida law "only defective workmanship that damages an otherwise non-defective completed project can constitute property damage within the meaning of a commercial general liability policy." (Def.'s Motion, D.E. #38, p. 18.(emphasis added)). Transportation argues that the Third Amended Complaint alleges damage to a defective completed project,[7] and therefore cannot be "property damage" under Florida law or the Insurance Policies.

In support of its argument, Transportation cites *Assurance Co. of America v. Lucas Waterproofing Company, Inc.*, 581 F. Supp. 2d 1201, 1209 (S.D Fla. 2008), which, in turn cites to *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 889 (Fla. 2007), which explicitly rejects the contention that "there can never be 'property damage' in cases of faulty construction because the defective work rendered the entire project damaged from its inception." This appears to be what Transportation is arguing—the defective work of the subcontractors was so bad that the entire project was defective. However, in *U.S. Fire*, the Florida Supreme Court explained that "[t]o the contrary, faulty workmanship or defective work that has damaged the otherwise nondefective completed project has caused 'physical injury to tangible property' within the plain meaning of the definition in the [CGL] policy." *Id.* Accordingly, the question is whether Aero, through its faulty workmanship, caused damage to any otherwise non-defective portions of the project.

---

[6] The policies actually cover "property damage" and "bodily injury," however the parties agree that "bodily injury" damages are not at issue.

[7] Transportation is not clear on what portion of the Project is defective versus what portion is non-defective. Transportation simply states that the "Third Amended Complaint describes damage to a defective completed project," and then cites to paragraphs 24 through 41 of the Third Amended Complaint, which describe numerous alleged deficiencies in the Project. (Def.'s Motion, D.E. #38, ¶ 21.) Transportation is apparently arguing that the Project has so many deficiencies that the Project as a whole should be considered defective property.

A similar scenario was addressed by the Florida Supreme Court on a question certified by the Eleventh Circuit Court of Appeals. In *Auto-Owners Ins. Co. v. Pozzi Window Co.*, 984 So.2d 1241, 1247 (Fla. 2008), the Florida Supreme Court considered whether a CGL insurer was required to cover the cost of replacement or repair of a product damaged by defective work of a subcontractor. The court noted that both the Eleventh Circuit Court of Appeals and the Southern District of Florida had used the phrases "defective windows" and "defective installation" interchangeably in their respective opinions. The court stated that the distinction between the two was critical, however, because

> [i]f the windows were purchased by the Homeowner and were not defective before being installed, coverage would exist for the cost of repair or replacement of the windows because there is physical injury to tangible property (the windows) caused by defective installation by a subcontractor. In that instance, damage to the windows caused by the defective installation is the same as damage to other portions of the home caused by the leaking windows. However, a different result would follow if the windows were defective prior to being installed and the damage to the completed project was therefore caused by defective windows rather than faulty installation alone.

*Id.* at 1247. Similarly here, any alleged damage <u>to the HVAC system</u> as well as damage caused <u>by the HVAC system</u> due to Aero's defective workmanship is conceivable "property damage" under the policies.

Moreover, the Third Amended Complaint alleges damages beyond damage to the HVAC system itself, including the "[c]osts resulting from property damage, including damage to furniture, fixtures, and equipment," allegedly caused by, among other things, the defective installation, and/or inspection of the HVAC system. (Third Amend. Compl. ¶¶ 36, 48.) While it may be unclear as to whether Aero's allegedly defective workmanship caused damage to the otherwise non-defective HVAC equipment or damage to "other property" (or both), this uncertainty does not preclude Transportation's duty to defend. *See Baron Oil Co. v. Nationwide Mutual Fire Ins.*, 470 So.2d 810 (Fla. 1st DCA 1985) ("All doubts as to whether a duty to defend exists in a particular case must be resolved against the insurer and in favor of the insured."); *Tropical Park, Inc. v. United States Fidelity and Guaranty Co.*, 357 So.2d 253, 256 (Fla. 3d DCA 1978) ("So long as the complaint alleges facts that create potential coverage under the policy, the insurer must defend the suit.").

13

Additionally, Transportation, itself, concedes that certain alleged defects in the Third Amended Complaint constitute "property damage" under the Insurance Policies. In paragraph 36 of the Third Amended Complaint, the Aventura Plaintiffs allege copious defects in the construction of the project, including various defects caused by water intrusion potentially due to the defective design, construction, supervision, installation, and/or inspection of the HVAC system. In its Motion for Summary Judgment, Transportation states that "[o]ther than the specific allegations of water or moister intrusion, none of the allegations listed in paragraph 36 of the Third Amended Complaint can be fairly described as 'property damage.'" (Def.'s Motion, D.E. #38, p. 19 (emphasis added).) Accordingly, even if this moisture intrusion damage were the only property damage alleged in the Complaint, the allegation is sufficient to trigger Transportation's duty to defend Weitz under the Insurance Policies. *See Tropical Park*, 357 So.2d at 256 ("If the complaint alleges facts partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit.").

### III.  Occurrence of the Property Damage

Transportation next argues that no property damage is alleged to have occurred during the terms of the policies. The Insurance Policies state that the ' insurance applies to . . . 'property damage' only if: (1) The . . . 'property damage' is caused by an 'occurrence' that takes place in the "coverage territory"; [and] (2) The . . . "property damage" occurs during the policy period." Transportation argues that the Third Amended Complaint alleges that the damage to the Project occurred during Florida's 2004 and 2005 hurricane seasons, thus occurring well outside of the Insurance Policies' converge periods of January 1, 2002 through January 1, 2004.

Turning to the Third Amended Complaint, what the Aventura Plaintiffs allege is that "Plaintiffs justifiably relied to their detriment on Weitz's representations that the stucco at the Aventura Project had been properly applied and did not take any prophylactic measures before the 2004 or 2005 hurricane seasons that could have mitigated the subsequent property damage and related adverse impacts on [The Aventura] Plaintiffs and residents at the Aventura Project." (Third Amend. Compl. ¶ 41.) (emphasis added). Transportation reads this allegation as meaning that all property damage occurred subsequent to the 2004 and 2005 hurricane seasons. The Court disagrees with Transportation's reading. The Court reads the allegation as meaning that, had Weitz informed

14

the Aventura Plaintiffs of the known defects in the Project, the Aventura Plaintiffs could have mitigated any further damages. This reading is supported by reference to paragraph 41 of the Third Party Complaint, which alleges that "Weitz had superior knowledge of material stucco cracking and delamination since approximately October 2003." When these allegations are considered together, it is obvious that the Aventura Plaintiffs are alleging that, had Weitz informed them of defects known to Weitz before the 2004 and 2005 hurricane seasons, the alleged damages to the Project might have been reduced. Moreover, even if the Third Amended Complaint is read to allege that the Aventura Plaintiffs first became aware of damages to the Project in mid to late 2004, that allegation, at best, shows the date when the damages were discovered, but not the date when the damages first occurred.

The Insurance Policies apply to property damage if the damage is caused by an "occurrence" that takes place in the "coverage territory," and the "property damage" occurs during the policy period. Therefore, it is the property damage that must occur during the policy period in order for there to be coverage; an "occurrence" need not take place during the policy period. *See Auto-Owners Ins. Co. v. Reliance Ins. Co.*, 227 F. Supp. 2d 1248, 1265 (M.D. Fla. 2002). In *Trizec Properties, Inc. v. Biltmore Constr. Co.*, 767 F.2d 810 (11th Cir. 1985), the court faced a scenario similar to this case. There, a contractor was sued for negligence in relation to its work installing a roof deck in a shopping mall. *Id.* at 813. The contractor's CGL insurance policy, with language substantially similar to the Insurance Policies at issue in this case, was in effect from 1972 to 1976, however, the damages were not discovered by the plaintiff until 1979. *Id.* at 812. There, the insurance company argued, as has Transportation here, that the occurrence of the damage can only trigger coverage where it is discovered or has "manifested" itself. *Id.* at 813. The *Trizec* Court disagreed, stating that "potential for coverage is triggered when an 'occurrence' results in 'property damage.' There is no requirement that the damages 'manifest' themselves during the policy period. Rather, it is the damage itself which must occur during the policy period for coverage to be effective." *Id.*

Similar to the facts in *Trizec*, the Third Amended Complaint does not allege the actual date when the damage to the Project occurred. What is alleged is that, prior to the 2004 hurricane season, there was some damage to the Project. The extent and severity of that damage is not evident on the face of the Third Amended Complaint, however, the allegations "at least marginally and by

reasonable implication" can be read to allege that some defects in the Project occurred within the Insurance Policies' coverage period. *See Klaesen Bros. v. Harbor Ins. Co.*, 410 So. 2d 611, 613 (Fla. 4th DCA 1982). Accordingly, because the complaint alleges facts "which fairly bring the cause within the coverage of the insurance contract," *Tropical Park*, 357 So. 2d at 256, there is a potential for coverage and Transportation owes Weitz a duty to defend the Main Proceeding.

### IV.   Policy Exclusions

Transportation argues that certain exclusions in the Insurance Policies preclude coverage in this case. While the Court agrees that "if the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend," *State Farm Fire & Cas. Co. v. Tippett*, 864 So. 2d 31, 35 (Fla. 4th DCA 2003), the Court finds that the Third Amended Complaint does not show the applicability of any of the exclusions argued by Transportation. For example, Transportation points to a policy exclusion contained in paragraph m(2), which excludes coverage for property damage arising out of Aero's delay in performing its contract. While this may ultimately be proven to be the case, the Third Amended Complaint contains no allegations supporting the application of this or any other exclusions referenced by Transportation. Accordingly, these exclusions do not preclude coverage at this stage of the dispute.[8]

## CONCLUSION AND FINAL DECLARATORY JUDGMENT

For the Reasons stated above, and in open court at the hearing held on these Motions on May 8, 2009, it is hereby

ORDERED and ADJUDGED that

(1)   Transportation Insurance Company's Motion for Summary Judgment (D.E. #37) is denied;

(2)   The Weitz Company, LLC's Motion for Partial Summary Judgment (D.E. #42) is granted;

---

[8] This determination should not be in any way construed as a finding that these exclusions may not ultimately control the scope of Transportation's defense of Weitz in the Main Proceeding. All that the Court has determined is that the policy exclusions referenced by Transportation presently cannot defeat its duty to defend. Transportation is free to argue the appropriate scope of its defense of Weitz through the proper procedures at the proper time. *See Irvine v. Prudential Property and Cas. Ins. Co.*, 630 So. 2d 579, 580 (Fla. 3d DCA 1993).

(3) Transportation Insurance Company's Motion to Strike (D.E. #52) is denied as moot; and

(4) Transportation Insurance Company's Motion in Limine (D.E. #55) is denied as moot.

Its further ORDERED AND ADJUDGED that declaratory judgment be and the same hereby is entered in favor of Plaintiff, the Weitz Company, LLC, and against Defendant, Transportation Insurance Company. By reason of the terms and conditions of the Insurance Policies, Transportation is obligated to defend the Weitz and to assume Weitz's ongoing defense against the claims brought by the Aventura Plaintiffs against Weitz in the Main Proceeding arising out of the scope of Aero Cooling System, Inc.'s work on the Project.

Defendant, Transportation Insurance Company's request for declaratory judgments, to the extent that it is seeking declarations that it is has no duty to defend Weitz and to assume Weitz's ongoing defense against the claims brought by the Aventura Plaintiffs against Weitz in the Main Proceeding arising out of the scope of Aero's work on the Project, are denied.[9]

The Court retains jurisdiction solely on the outstanding issue of the payment of attorney's fees and costs on appropriate motion by either party. All pending motions are denied as moot and the case is closed.

DONE AND ORDERED in Chambers, Miami, Florida, May 19, 2009.

Paul C. Huck
United States District Judge

Copies furnished to:
All Counsel of Record

---

[9] As stated above, and as acknowledged by the parties at the May 8, 2009 hearing, Weitz is seeking only a declaratory judgment that Transportation has a duty to defend Weitz against the claims brought by the Aventura Plaintiffs against Weitz in the Main Proceeding arising out of the scope of Aero's work on the Project. Accordingly, the Court need not and does not address Transportation's various counterclaims seeking declaratory judgments related to the duty to defend any claims other than those brought by the Aventura Plaintiffs against Weitz arising out of the scope of Aero's work on the Project. Additionally, the Court makes no determination as to the ultimate extent of Transportation's defense of Weitz in the Main Proceeding.